UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re:<br><br>Paul Hansmeier,<br><br>        Debtor. | BKY No. 15-42460<br>ADV No. 16-04018 |

Randall L. Seaver, Trustee,

        Plaintiff,

vs.

Paul Hansmeier and Padraigin Browne,

        Defendants.

**TRUSTEE'S REPLY TO RESPONSES OF PAUL HANSMEIER AND PADRAIGIN BROWNE TO TRUSTEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Randall L. Seaver, Trustee ("Trustee" or "Plaintiff") of the Bankruptcy Estate of Paul Hansmeier ("Hansmeier"), as and for his response to Padraigin Browne ("Browne"), states and alleges as follows:

### Introduction

Once again, the Hansmeier-Browne team mischaracterizes and ignores facts and law in an effort to avoid justice. The United States Supreme Court case of *Law v. Siegel*, 134 S. Ct. 118 (2014), by its very terms, has absolutely has no relevance to the matter before this Court.

### Hansmeier's Responses

Hansmeier's original response consists of an unverified document in which he asserts a personal attack on the trustee, and refers, in an offhand manner, to the case of *Law v. Siegel*, 134 S. Ct. 118 (2014). Apparently, he has never read the case, or has simply chosen to ignore the

facts of that case and this case. *Law v. Siegel* has no bearing on this case. As will be seen by the following analysis, if any of the attorneys on the Hansmeier-Browne team had reviewed the facts and the law, they would know that the case of *Law v. Siegel* has no relevance to the issues before this Court.

On May 16, 2015, Hansmeier filed a "corrected" opposition to the Trustee's motion for partial summary judgment. Hansmeier's corrected filing claims, in a footnote, that the May 13, 2016, objection was "a non-final draft of this brief" and that it was submitted in error. Hansmeier fails to address any of the baseless allegations in his "draft brief," and his corrected brief only addresses his *Law v. Siegel* argument and omits his previous request for sanctions and disbarment of the trustee and his attorneys. Hansmeier claims the original filing was in error, despite the fact that Hansmeier printed and signed the document before having it hand delivered to the Court. It is highly unlikely that Hansmeier did not understand what he was filing given the length of the objection, its content, and the inclusion of a picture.

### 1.     Law v. Siegel has no Application to this Case

In the *Law v. Siegel* case, the debtor claimed a homestead as exempt. No objection was made to the claimed exemption by the trustee, and the homestead exemption became final. Years after the homestead exemption became final, the trustee sought to surcharge the homestead to force the debtor to pay Chapter 7 administrative expenses from the sale of the exempt homestead. *Law v. Siegel,* 134 S. Ct. 1188 (2014).

The Supreme Court held that where property had been exempted from the bankruptcy estate pursuant to 11 U.S.C. §522, the trustee, who had not objected to the claimed exemption, could not surcharge the exempt property and force the debtor to pay Chapter 7 administrative expenses. *Id.* At 1195.

2

A review of the facts and the law would have revealed the inapplicability of *Law v. Siegel*. That is because the trustee, in this case, timely objected to the claimed homestead exemption. In other words, the trustee did exactly what the Supreme Court noted the trustee did not do in *Law v. Siegel*. The trustee's objection to the claimed homestead objection was filed on March 31, 2016, at docket no. 129, 28 days after the conclusion of the §341 meeting. After the objection was filed, the trustee's attorney, Matthew Swanson, was contacted by Hansmeier's attorney, Barbara May. By agreement between Barbara May and Matthew Swanson, the hearing on the objection was continued to August 10, 2016, because the August 1, 2016 trial in this case would resolve the issue.

*Law v. Siegel* does address the Court's power to surcharge or reduce a claimed exemption, however, it does not deal with a case where the debtor is the one taking actions to reduce his interest in the property. This is not an after the fact readjustment of exemptions, it is an action to determine the proper allocation of proceeds from the sale of real property. Unlike Siegel, the transactions and issues raised in Adv. No. 16-4018 are directly related to the real property and sale proceeds, and voluntary undertakings by Hansmeier/Browne. As such, Siegel has little, if any application hereto.

## 2. **The Trustee is not Seeking a Surcharge**

A hypothetical is helpful in demonstrating what the trustee is seeking in this case. Assume that a debtor has a home that he agreed to sell for $400,000. It is subject to a $200,000 mortgage, leaving, before costs of sale, $200,000, which is well within the $390,000 state homestead exemption. Then assume the debtor had signed a listing agreement, and hired contractors to provide services to the property, for which he did not pay. Assume that the closing costs, unpaid vendor invoices, and sale commission equal $50,000. When the debtor

3

goes to closing, in order to sell that property, he will have to pay $50,000 to the vendors, the title company, and the listing agent if he wants to complete the sale. Payment of those voluntarily incurred debts will decrease the amount of net proceeds ending up in the debtor's pocket after the closing. But, that is what he agreed to. The same is true here. The trustee seeks to have the Hansmeier-Browne team pay their voluntarily incurred sale obligations from proceeds in which they could claim an exemption.

Hansmeier and Browne on the other hand are seeking to force payment of those costs of sale onto the estate, which never sought to sell the property, and did not sign the listing agreement or agree to pay for repairs.

Also, this Court's approval of the retention of a listing agent, who is a professional, was never sought. This lack of professional approval was cited to this Court in the Chapter 13 Trustee's Response to Expedited Motion of the Debtor for Approval of Sale of Property of the Estate, docket no. 53, at paragraph 10. It was also cited by the U.S. Trustee in its objection to Hansmeier's sale motion at docket no. 56, paragraph 16. As noted by the U.S. Trustee, a professional whose employment has not been approved by the Court cannot be paid with estate funds. *In re Lamie v. U.S. Trustee*, 124 S. Ct. 1023 (2004).

In effect, Hansmeier and Browne are attempt to "surcharge" the estate for fees and expenses incurred by Hansmeier.

The trustee is not seeking to surcharge exempt property. First, Hansmeier's exemption has yet to be established, but also, a surcharge order would force a debtor to pay an obligation which he did not voluntarily agree. The reason for a surcharge order is because the person against whom the surcharge is sought, has not voluntarily agreed to pay the obligation. That is not the case here. Hansmeier and Browne voluntarily entered into the listing agreement, and

4

voluntarily agreed to pay the listing agent. Browne and Hansmeier, both attorneys, were aware that their sale of the property would also cause them to incur other expenses, referred to as closing costs, and they agreed to pay those.

Additionally, Hansmeier and Browne were obligated to pay home association fees. Browne signed contracts that personally obligated her to pay vendors. The closing costs for which the trustee seeks allocation to the Hansmeier-Browne team, were costs and expenses which Hansmeier and Browne agreed to pay. The unpaid vendor contracts are contracts that Browne agreed to pay. The bankruptcy estate is not a party to the listing agreement, nor was the Chapter 13 trustee a party to the listing agreement. The trustee isn't seeking a surcharge, nor does he have to, because Hansmeier and Browne voluntarily agreed to pay everything the trustee is saying should be allocated to them.

The issue is whether Hansmeier and Browne should pay the expenses they agreed to pay from the allocable homestead portion or, whether, in essence, Hansmeier's creditors are forced to bear the burden of those expenses, which Hansmeier and Browne agreed to pay.

### 3.     **Browne is not in Bankruptcy**

As to Browne, there is yet another factor that makes the case of *Law v. Siegel* inapplicable. Browne is not in bankruptcy and, so, of course, has claimed no exemption.

### 4.     **The Estate is Entitled to Proceeds from the Sale**

Browne also argues that the estate gets no money from the sale if the Court accepts her arguments. As a starting point, of course, this flies in the face of the representations made to this Court by one half of the Hansmeier-Browne team, Paul Hansmeier. In the motion seeking sale approval, he represented to the Court that over $20,000 would be paid to the bankruptcy estate.

5

No mention was made that the Hansmeier-Browne team intended to later claim that the estate is entitled to nothing from the sale.

Next, the only reason Browne is arguing that there is no money available for the estate is because, according to Browne's testimony, all of the obligations that she and Hansmeier voluntarily agreed to pay, are taken "off the top" of the sale proceeds so, in fact, if they are paid those fees and expenses, which the estate never sought authorization to pay, are borne by the estate.

### 5.     The Appraisal is Dispositive of Nothing.

On April 27, 2016, the plaintiff became aware, for the first time when Browne filed it with the Court, that Browne had obtained what purports to be an appraisal. The trial order in this case was entered on March 25, 2016, setting the trial for August 1, 2016. The plaintiff has not had an opportunity to depose the purported expert who prepared the appraisal. The plaintiff has a right to engage in discovery. Summary judgment on an issue is only appropriate "assuming there has been adequate time for discovery," *In re Celotex Corp v. Catrett,* 477 U.S. 317, 322 (1986). The plaintiff has the right to conduct discovery including a deposition of the appraiser. He has not had the opportunity to do so. The matter is not appropriate for summary judgment on this issue newly raised by Browne.

### 6.     The Appraisal is not Admissible.

Browne attempts to get the appraisal in front of the Court, in conjunction with the cross summary judgment motions, by declarations that simply say "Attached as Exhibit 1 hereto is a true and correct copy of an appraisal report…" The appraisal is hearsay. Browne's statement that she has attached an appraisal to her declaration does nothing to overcome the fact that it is hearsay. An appropriate foundation has to be presented by a summary judgment movant seeking

6

to "farm in" material. *In re Northgate Computer Systems, Inc.* 240 BR 328 (Bankr. D. Minn. 1999). Further, the appraisal purports to be expert opinion and thus the expert's opinion, including the hearsay appraisal, is subject to the admissibility standards of FRE 702, *Kumho Tire Company v. Carmichael* 526 US 137 (1999). The appraisal is not admissible and should not be considered by the Court.

### 7. Even if Admitted, the Appraisal Only Creates Factual Value Issues.

In the response previously submitted by the plaintiff, docket no. 12, the plaintiff, at pages 9 - 12, provided an analysis of why the appraisal itself created factual issues, including the fact that using one comparable contained in the appraisal results in a July, 2015 value in excess of $1,200,000.

This is precisely the sort of information that Rule 56(c)(1)(A) and (B) require of a party opposing summary judgment to cite to the Court. The plaintiff has no obligation, as Browne seems to think, to immediately obtain a dueling appraisal and present it to the Court. The appraisal submitted by Browne creates factual issues and, as required by Rule 56(c)(1)(A) and (B), the plaintiff has cited to the Court the creation of those factual issues. The appraisal conclusion is not a "fact." It is simply an opinion of an individual. The plaintiff in responding to the summary judgment motion has pointed out specific actual facts contained in the appraisal that support the plaintiff's position as to the valuation. Because all factual inferences must be construed in the light most favorable to the non-moving party. If that is done, then the value of the condominium in July exceeded $1,200,000. That is more than sufficient to defeat Browne's appraisal opinion, even if it was admissible.

### 8. Browne and Hansmeier's Shared Representation

Defendant's reply memorandum, filed as Document No. 16, contains a footnote asserting that Browne was not represented by Barbara May at her October 28, 2016 Rule 2004 examination.  See foot 4 at page 5 of Browne's Reply.  Defendant points to the cover sheet of the transcript as evidence that Ms. May was not representing Mrs. Browne, as the cover sheet does not identify Ms. May as Browne's attorney.  Unfortunately, before accusing the Trustee of misleading this Court, Mr. Burns apparently did not read the October 28, 2015 transcript.

Ms. May expressly refers to Mrs. Browne as "my client" at two points during the examination, with no objection from Browne or Hansmeier.

> MR. SHEU: I'm going to have a few more
> exhibits marked.
> (Browne Deposition Exhibit Numbers 2 - 4
> marked for identification.)
>
> Q. Ms. Browne, I'm handing you what's been marked
> Exhibits 2, 3 and 4. I'll indicate to you that these
> were provided by your attorney a few weeks ago.
>
> MS. MAY: I'm uncomfortable not seeing the
> documents **my client** is seeing.

October 28, 2015 transcript of Rule 2004 Examination of Padraigin Browne at 19-20. (emphasis added).

> MR. SHEU: Why don't we do this. We can
> take a short break while Ms. Browne takes a look at
> Exhibit 1 and puts into piles categories of documents.
>
> A(Browne). I'm not organizing this for you.
>
> Q. Well, the alternative would be for me to then
> ask you where in the stuff you sent me are the various
> categories of documents which I've listed by category,
> tax returns, transfers to you. Monyet, LLC is its own
> category, we went through it earlier, and you said you
> either produced it or didn't have it.

8

> MS. MAY: I can tell you that **my client** is
> not going to be your administrative assistant today.

Id. at 55. (emphasis added).  Ms. May was clearly acting as Browne's attorney during the examination.[1]

## CONCLUSION

For the reasons stated herein, along with the Plaintiff's previous submissions, this matter is not ripe for summary on any issue except the allocation of the sales proceeds.

**FULLER, SEAVER, SWANSON & KELSCH, P.A.**

Dated: May 17, 2016            By: /e/ Matthew D. Swanson
                                Matthew D. Swanson            390271
                                Randall L. Seaver             152882
                                12400 Portland Avenue South, Suite 132
                                Burnsville, MN 55337
                                (952) 890-0888
                                Attorneys for Randall L. Seaver, Trustee

---

[1] Attached to the Declaration of Matthew D. Swanson are true and correct copies of pages 19-20 and 55 of Browne's October 28, 2015 Rule 2004 Examination.

9

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

In re:                                                          BKY No. 15-42460
                                                                ADV No. 16-04018
Paul Hansmeier,

       Debtor.

Randall L. Seaver, Trustee,

       Plaintiff,

vs.

Paul Hansmeier and Padraigin Browne,

       Defendants.

### DECLARATION OF MATTHEW D. SWANSON

I, Matthew D. Swanson, declare under penalty of perjury, that:

1. I am one of the attorneys representing the Plaintiff, Randall L. Seaver, Trustee, in the above captioned adversary case.

2. Attached to this declaration as Exhibit 1 is a true and correct copy of excerpts from the Defendant October 28, 2015 Rule 2004 examination. Exhibit 1 contains pages 19-20 and 55, which are cited to in the Plaintiff's May 17 2016 reply.

                                      FULLER, SEAVER,
                                      SWANSON & KELSCH, P.A.

Executed on May 17, 2016         /e/ Matthew D. Swanson_____
                                      Matthew D. Swanson      390271
                                      12400 Portland Avenue South, Suite 132
                                      Burnsville, MN 55337
                                      (952) 890-0888

                                      Attorneys for Plaintiff

Paradigm Browne
10/28/2015

Page: 5

### Page 17

your two children, is that correct?
A. That's correct.
Q. Okay. And when was that trust set up?
A. I think 2011, I think, I'm not sure.
Q. And are there any documents associated with the creation of that trust such as a trust instrument?
A. Yes.
Q. Did you provide them today with the box of documents?
A. I believe so.
Q. So the trust document itself is in there?
A. I think so, yes.
Q. Okay. I just looked through it, I didn't find it.
   THE WITNESS: Paul?
Q. You don't know if it was provided or not?
A. No. I thought it was in there, but if it's not, then it's not.
Q. Okay. Is the Mill Trust still in existence today?
A. I don't know how to answer that. I guess so, yes.
Q. And what is the purpose of the trust?
A. To provide for our family expenses.
Q. How is it funded?

### Page 18

A. Through transfers from Paul and from his companies.
Q. How much is in it now?
A. Approximately $8,000.
Q. What was the high water mark?
A. I don't know.
Q. Did you ever have access to the account statements for that trust?
A. Yes.
Q. Was Monyet the, the funding LLC for the trust?
A. I don't know what that means.
Q. Well, a trust itself I presume doesn't have its own bank account, is that your understanding?
A. I just did what the attorney said to do and I didn't, I don't know how any of it works.
Q. What attorney are you talking about?
A. The attorney that set up the trust.
Q. Who's that?
A. I don't remember his name. He's out of Utah.
Q. Was it Lee McCullough?
A. That sounds familiar.
Q. Did you ever have access to the account statements for Monyet or Monyet, LLC?
A. Yes.
Q. Were you a signatory on that account?

### Page 19

A. I don't believe so.
Q. Where was the account?
A. Scottrade I think.
Q. Scottrade?
A. I think.
Q. Is that an online broker?
A. Yes.
Q. So was the money in stocks as opposed to cash?
A. I don't know.
Q. I'm sorry?
A. I don't know.
Q. Who would know most about Monyet and the Mill Trust?
A. Paul was the manager of the, of Monyet.
Q. You were the trustee, weren't you?
A. I was the trustee of the Mill Trust.
Q. And as trustee of the Mill Trust, what were your obligations or duties?
A. I was in charge of using the money as I saw fit for our family.
   MR. SHEU: I'm going to have a few more exhibits marked.
      (Browne Deposition Exhibit Numbers 2 - 4
      marked for identification.)
Q. Ms. Browne, I'm handing you what's been marked

### Page 20

Exhibits 2, 3 and 4. I'll indicate to you that these were provided by your attorney a few weeks ago.
   MS. MAY: I'm uncomfortable not seeing the documents my client is seeing.
   MR. SHEU: I will share them with you.
Q. Do you see Exhibits 2, 3 and 4?
A. Yes.
Q. Are these, and you can take a look through them, are these your 2012, 2013 and 2014 income tax returns?
A. That's what they appear to be.
Q. Okay. I'll have you first look at 2012 which is Exhibit 2. The second page of it appears to be a W-2 from your employer Shumaker & Sieffert, is that correct?
A. Yes, that's what it looks like.
Q. What is your income at Shumaker & Sieffert?
A. I get paid a percentage of the amount I bill.
Q. Are you a partner or an associate?
A. I'm not, I'm an associate.
Q. Okay. What was your income in 2012?
A. It appears that it was 55,000 for state and 62 for federal, with respect to Social Security it was 62,000.
Q. When did you begin working at Shumaker & Sieffert?
A. 2011.

|  | Page 53 |  | Page 55 |
|---|---|---|---|
| 1 | A. As soon as possible. | 1 | at Exhibit 1 and -- |
| 2 | Q. Why so quickly? | 2 | A. I can't look at two things at once. |
| 3 | A. So that we can lower our overhead and hopefully | 3 | MS. MAY: Mr. Sheu, she's not even a fifth |
| 4 | pay off the, this stuff. | 4 | of the way through it. We've all sat here in dead |
| 5 | Q. What's this stuff? | 5 | silence for 20 minutes while she digs through 2,100 |
| 6 | A. The bankruptcy. | 6 | pages of documents. Is there a better plan than this? |
| 7 | Q. I want to turn your attention back to the Mill | 7 | MR. SHEU: Why don't we do this. We can |
| 8 | Trust and Monyet. Do you know if the Mill Trust is a | 8 | take a short break while Ms. Browne takes a look at |
| 9 | revocable trust? | 9 | Exhibit 1 and puts into piles categories of documents. |
| 10 | A. I have no idea. | 10 | A. I'm not organizing this for you. |
| 11 | Q. It would say so on the trust documents probably? | 11 | Q. Well, the alternative would be for me to then |
| 12 | A. Yes. I don't remember. | 12 | ask you where in the stuff you sent me are the various |
| 13 | Q. Do you know if there's a spendthrift clause? | 13 | categories of documents which I've listed by category, |
| 14 | A. I don't know what that means. | 14 | tax returns, transfers to you. Monyet, LLC is its own |
| 15 | Q. And you're representing that there's in the box | 15 | category, we went through it earlier, and you said you |
| 16 | of documents you brought today a copy of the Mill Trust? | 16 | either produced it or didn't have it. |
| 17 | A. I think there is. | 17 | MS. MAY: I can tell you that my client is |
| 18 | Q. Okay. | 18 | not going to be your administrative assistant today. |
| 19 | MR. SHEU: Why don't we mark that stack as | 19 | And I'm going to object to having her sort through your |
| 20 | Exhibit 7. | 20 | documents. |
| 21 | (Browne Deposition Exhibit Number 7 | 21 | MR. SHEU: I'm trying to see if the |
| 22 | marked for identification.) | 22 | documents are actually produced. This was a subpoena |
| 23 | Q. I'll have you flip through Exhibit 7 and find | 23 | for documents. |
| 24 | the Mill Trust for me. | 24 | MS. MAY: And we have produced them. |
| 25 | A. There is over 2,000 pages of documents here. | 25 | MR. SHEU: And we have yet to see if they |

|  | Page 54 |  | Page 56 |
|---|---|---|---|
| 1 | Q. Okay. Well, you're telling me it's in there | 1 | were produced. |
| 2 | somewhere, I didn't see it. | 2 | MS. MAY: Well, maybe that's because you |
| 3 | A. Paul and I put it together together, it was my | 3 | didn't ask for them in advance. You had them delivered |
| 4 | understanding this could be in there and I don't know if | 4 | at the moment the deposition was to start and you left |
| 5 | it is or not, other than that was my understanding. | 5 | them out in the hallway for 45 minutes. So it isn't our |
| 6 | Q. Okay. I went through the documents and they're | 6 | fault that you never read or reviewed the documents. |
| 7 | in -- | 7 | And I don't think we should all sit here while you use |
| 8 | A. I can spend an hour going through that if you | 8 | the deponent as a slave to dig through your documents. |
| 9 | want, but I -- | 9 | MR. SHEU: I went through the documents in |
| 10 | Q. Well, I spent 15 minutes going through it. They | 10 | 15 minutes and I didn't find any Mill Trust documents |
| 11 | are in no order whatsoever, in fact, they appear to be | 11 | MS. MAY: And we've offered an alternative |
| 12 | deliberately out of order. So if there's the Mill Trust | 12 | to that. We can provide a copy of the Mill Trust |
| 13 | in there, I'd love to find it. | 13 | document. I think I have it in my office, he has it in |
| 14 | MR. HANSMEIER: Mr. Sheu, rather than have | 14 | his office. If it isn't in there, we can certainly |
| 15 | my wife page through 2,000 pages of documents, I'd be | 15 | provide it. But this appears just to be petty and |
| 16 | glad when I go back to my office to send you a copy to | 16 | punishment and I want that on the record. |
| 17 | your personal email, a copy of that. So regardless of | 17 | MR. SHEU: I want it on the record that |
| 18 | whether you can find it or not right now, you'll have it | 18 | this is the most bad faith production of documents I |
| 19 | this afternoon. | 19 | have ever seen. They are not in any order, and in fact, |
| 20 | MR. SHEU: Well, I'm taking her deposition, | 20 | they are deliberately out of order, they're upside down. |
| 21 | I don't want to ask, be asking you questions at the same | 21 | A. I didn't see a single page upside down as of |
| 22 | time. | 22 | yet. |
| 23 | A. Do you mind if I take out portions after I look | 23 | Q. That's because I put them in the right order |
| 24 | through them? | 24 | when I reviewed them before the deposition started, at |
| 25 | Q. Please do. In fact, if you want to take a look | 25 | least most of them. |

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

In re:  BKY No. 15-42460
          ADV No. 16-4018

Paul Hansmeier,

    Debtor.

---

Randall L. Seaver, Trustee,

    Plaintiff,

vs.

Paul Hansmeier and Padraigin Browne,

    Defendants.

---

I hereby certify that on May 17, 2016, I caused the following documents:

    ***- Trustee's Reply to Responses of Paul Hansmeier and Padraigin Browne to Motion
    for Partial Summary Judgment.***
    *-Declaration of Matthew D. Swanson*

to be filed electronically with the Clerk of Court through ECF, and that the above documents will be delivered by automatic e-mail notification pursuant to ECF and this constitutes service or notice pursuant to Local Rule 9006-1(a).

I further certify that I caused copy of the foregoing documents to be mailed by first class mail to the entities and individuals listed below:

Paul Hansmeier
3749 Sunbury Cove
Woodbury, MN 55125


Dated: May 17, 2016                                                      /e/ Matthew D. Swanson
                                                                                 Matthew D. Swanson